UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM MCKINNEY,
*Plaintiff,*

v.

No. 3:24-cv-1024 (JAM)

DANIEL DOUGHERTY *et al.*,
*Defendants.*

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C § 1915A

Plaintiff William McKinney is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that a prison warden and prison lieutenant have violated his rights under the U.S. Constitution. The Court issues this initial review order pursuant to 28 U.S.C. § 1915A, allowing one of his claims to proceed.

### BACKGROUND

McKinney has named two defendants: Warden Daniel Dougherty and Lt. Pearson. I draw the following facts from the allegations in McKinney's complaint, accepting them as true only for the purposes of this ruling.

McKinney is a sentenced, minimum-security inmate who has been assigned single-cell status for seven years.[1] He has a mental health issue that results in emotional "dyscontrol" when he is confined with others.[2] He is also "socially impaired," which "causes [him] to hurt [him]self and others at times."[3]

---

[1] Doc. #1 at 4 (¶¶ 1-2); *see* State of Connecticut Department of Corrections, Inmate Information, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=231828 (last accessed June 17, 2024).
[2] Doc. #1 at 7 (¶ 15).
[3] *Ibid.*

1

In April 2024, McKinney was transferred to Corrigan-Radgowski Correctional Center ("Corrigan") and placed in a cell block housing "mostly lifers and gang members."[4] Following his transfer, McKinney took a shower and noticed black mold all over the shower walls and ceiling.[5] He wrote to a staff member in Legal Affairs about the problem.[6]

Shortly thereafter, Corrigan Warden Daniel Dougherty "did a tour of Fox Pod," McKinney's cell block.[7] McKinney asked Dougherty why he had been moved to a high-security prison, and Dougherty responded, "You['re] the guy that wrote up the inmate workers for not cleaning the showers properly."[8]

The inmate workers heard this and began calling McKinney a "snitch," immediately putting McKinney at risk.[9] These other inmates investigated further and learned that McKinney previously testified in two murder trials against the "Crips/Grape Street Set" in New Haven.[10] They labeled him a "rat," placing "his life in danger."[11]

After receiving a contraband ticket, McKinney was placed in "seg."[12] This housing unit is "filled with crips" who know McKinney "told on them" and who make death threats against McKinney and his family daily.[13] This has been "mental and emotional torture."[14] McKinney "notified the warden of this in requests and grievances."[15] "The gang" also learned that

---

[4] *Id.* at 4 (¶ 1), 5 (¶ 5).
[5] *Id.* at 4 (¶ 3).
[6] *Ibid.*
[7] *Id.* at 4 (¶ 2), 5 (¶ 5).
[8] *Id.* at 5 (¶¶ 5-6).
[9] *Id.* at 5 (¶ 7).
[10] *Id.* at 5 (¶ 8).
[11] *Id.* at 5 (¶ 9).
[12] *Ibid.*
[13] *Id.* at 5 (¶ 10).
[14] *Ibid.*
[15] *Id.* at 5 (¶ 11).

McKinney's cousin works at Cheshire Correctional Institution, placing him at further risk as the relative of a DOC employee.[16]

On June 4, 2024, McKinney sent a written request for protective custody to Lt. Pearson, a unit manager, and Pearson did not respond.[17] On June 10, McKinney again notified Lt. Pearson that McKinney's life was in danger and requested protective custody.[18] Pearson answered "'you[']re] denied' and walked away."[19] A few hours later, another correctional officer informed McKinney that he was being moved from "seg" to "C-Pod," where he would have a cell mate.[20] C-Pod is "full of gang members."[21]

According to McKinney, Dougherty and Pearson are "forcing cellmates on [him] so that [he] will either hurt [him]self or others" and "punishing [him] for wanting to be safe."[22]

McKinney seeks an emergency preliminary injunction to be transferred out of Corrigan, declaratory relief, and compensatory, nominal, and punitive damages of $50,000 against each defendant.[23]

## DISCUSSION

The Court is required by law to review prisoner civil complaints and dismiss any portion of such complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must construe the allegations liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United*

---

[16] *Ibid.*
[17] *Id.* at 5 (¶¶ 12-13).
[18] *Id.* at 5 (¶ 12).
[19] *Ibid.*
[20] *Id.* at 5 (¶ 14).
[21] *Ibid.*
[22] *Id.* at 7 (¶¶ 15-16).
[23] *Id.* at 7 (¶ 19).

*Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[24] However, a *pro se* complaint must still allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### *Eighth Amendment deliberate indifference to safety*

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. The Supreme Court has long recognized that a prison official violates the Eighth Amendment if he is deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish a claim of deliberate indifference to safety, a prisoner must show that: (1) he was subject to conditions of confinement that posed an objectively serious risk of harm; and (2) a defendant prison official possessed actual awareness of this risk. *See Pagan v. Rodriguez*, 2020 WL 3975487, at *4 (D. Conn. 2020) (citing *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020)).

McKinney's allegations against Dougherty adequately state a deliberate indifference claim. Courts in this Circuit have long held that a prison official can be liable for deliberate indifference if he "identifies an inmate as being an informant or 'snitch' in front of other inmates." *Montanez v. Lee*, 2019 WL 1409451, at *3 (S.D.N.Y. 2019) (collecting cases); *see Quezada v. Fischer*, 2016 WL 11478236, at *9 (N.D.N.Y. 2016) (collecting cases). An inmate must show either that this conduct led to physical harm or that it "gave rise to an excessive risk to his safety or imminent harm." *Lawrence v. Agramonte*, 2020 WL 2307642, at *5 (D. Conn. 2020).

---

[24] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

4

McKinney alleges that Dougherty identified him as "the guy that wrote up the inmate workers" in the presence of those workers, leading them to both label him a snitch and investigate him further, thereby learning of his previous testimony against the crips. They then began making death threats against McKinney and his family that he has described as "mental and emotional torture."[25]

These allegations fall within the ambit of a deliberate indifference to safety claim. *See ibid.* (permitting deliberate indifference claim to proceed where inmate alleged that he suffered threats from other inmates as a result of being labeled, among other things, a snitch); *Morgan v. Semple*, 2020 WL 2198117, at *13-14 (D. Conn. 2020) (denying motion to dismiss deliberate indifference claim where inmate alleged that defendants referred to him as a snitch in front of other inmates and where the court could not determine at that stage "whether the psychological pain [the inmate] experienced was more than *de minimis*"). Accordingly, I will allow McKinney's claim against Dougherty to proceed.

McKinney has also stated a claim against Pearson. He alleges that he told Pearson he feared for his life and that Pearson failed to act; he first ignored and then summarily denied McKinney's request to be placed in protective custody. McKinney has thus plausibly alleged an objectively serious risk of harm and Pearson's awareness of that risk. *See Torres v. McGrath*, 2017 WL 3262162, at *6 (D. Conn. 2017) (*pro se* plaintiff stated a plausible claim of deliberate indifference to harm where he alleged that a prison official repeatedly denied his transfer requests "despite the plaintiff's expressed concerns that his safety was in jeopardy"); *see Ryan v. Bell*, -- F. Supp. 3d --, 2024 WL 36591, at *4 (N.D.N.Y. 2024) (denying summary judgment on deliberate indifference to harm claim because parties disputed, *inter alia*, whether plaintiff had

---

[25] Doc. #1 at 5 (¶ 10).

actually requested to be placed in protective custody).

In sum, I will permit McKinney's claims against Dougherty and Pearson to proceed as Eighth Amendment deliberate indifference claims.

### *First Amendment retaliation*

"To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020). An adverse action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Benway v. Aldi*, 2020 WL 4433561, at *4 (D. Conn. 2020) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012)). Courts "'must approach prisoner claims of retaliation with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bacon*, 961 F.3d at 542-43 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

McKinney has not alleged facts sufficient to plausibly support a claim for First Amendment retaliation. Although he alleges that Dougherty commented on the fact that he had complained about the showers, he does not allege sufficient facts to show that Dougherty thereafter engaged in any intentional retaliation. To be sure, Dougherty's comment was overheard by other prisoners who in turn labeled McKinney as a snitch, but there are no facts alleged to suggest that Dougherty sought to endanger McKinney by raising with him the fact that he had complained about mold in the showers. Nor are there facts to suggest that Dougherty took

adverse action against McKinney because of McKinney's complaint to him that he should not be at Corrigan.

McKinney has also not alleged a plausible claim for First Amendment retaliation against Lt. Pearson. To the extent that he alleges that Lt. Pearson was indifferent to his welfare, he has not alleged facts to further plausibly suggest that this indifference or any other adverse action was taken by Lt. Pearson in order to retaliate against McKinney for any complaints or other protected speech activity.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. The following claims against the following defendants may proceed: McKinney's Eighth Amendment deliberate indifference claims may proceed against Dougherty and Pearson in their individual capacities insofar as he seeks monetary damages against them. These claims may proceed against Dougherty and Pearson in their official capacities insofar as McKinney seeks injunctive or declaratory relief against them.

2. All other claims and defendants are DISMISSED without prejudice to McKinney's filing of an amended complaint within thirty (30) days if he has good faith grounds to allege additional facts that overcome the grounds stated in this ruling for dismissing his claims.

3. Within twenty-one (21) days of this Order, the Clerk shall ascertain the current work addresses for Dougherty and Pearson and mail a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-

person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

4. Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. This initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the right of any defendant to seek relief by way of any motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

5. Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

6. All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

7. If McKinney changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. McKinney must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

8. McKinney shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 17th day of June 2024.

                                              /s/ *Jeffrey Alker Meyer*
                                              Jeffrey Alker Meyer
                                              United States District Judge