# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCKINNEY, | : |
| *Plaintiff*, | : |
| | : |
| v. | :    No. 3:24-cv-1024 (VAB) |
| | : |
| DANIEL DOUGHERTY, *et al.,* | : |
| *Defendants*. | : |

## RULING AND ORDERS ON PENDING MOTIONS

Before the Court for further review are plaintiff William McKinney's amended complaints, *see* ECF Nos. 14, 42, 43, 58, and fourteen pending *pro se* motions. ECF Nos. 9, 10, 15, 16, 27, 33, 49, 50, 52, 55, 56, 57, 61, 62.

For reasons that follow, Mr. McKinney's Motion for Leave to File Amended Complaint, ECF No. 55, is **GRANTED**.

All other pending motions are **DENIED**.

Mr. McKinney may pursue his Eighth Amendment deliberate indifference claim for damages against Warden Dougherty, Lieutenant Pearson, and Lieutenant Peau in their individual capacities.

All other claims, and all other Defendants are dismissed from this case.

## I. BACKGROUND

Mr. McKinney filed a *pro se* Complaint under 42 U.S.C. § 1983, while housed at Corrigan-Radgowski Correctional Center ("Corrigan"). ECF No. 1 at 2. He sued two Corrigan officials—Warden Dougherty and Lieutenant Pearson—for violating his constitutional rights. *Id.* at 2–3. U.S. District Judge Jeffrey Alker Meyer reviewed Mr. McKinney's original Complaint. *See* ECF No. 13.

Judge Meyer permitted Mr. McKinney to pursue his Eighth Amendment deliberate indifference claim for damages against Warden Dougherty and Lieutenant Pearson. *Id.* at 7. Judge Meyer dismissed Mr. McKinney's First Amendment retaliation claim without prejudice. *Id.* But Judge Meyer permitted Mr. McKinney to file an Amended Complaint within thirty days of the initial review order, if Mr. McKinney had "good faith grounds to allege additional facts that overcome the grounds stated in this ruling for dismissing his claims." *Id.*

In addition to filing twelve motions, Mr. McKinney has since filed four Amended Complaints. *See* ECF Nos. 14, 42, 43, 58. Mr. McKinney filed his first Amended Complaint within thirty days of the initial review order. *See* ECF No. 14. Mr. McKinney then filed a motion for extension of time to file another Amended Complaint. ECF No. 34. Judge Meyer granted that motion, giving Mr. McKinney until August 23, 2024, to file a Second Amended Complaint. ECF No. 41.

Mr. McKinney filed a Second and Third Amended Complaint on August 12, 2024, and August 20, 2024, respectively. ECF Nos. 42, 43. But before Judge Meyer could conduct his initial review of these amended pleadings, Mr. McKinney filed two motions for leave to amend his Complaint, ECF Nos. 50, 55, and a Fourth Amended Complaint. ECF No. 58.

## II. DISCUSSION

After transfer of Mr. McKinney's case to this Court on January 17, 2025, ECF No. 54, there are now fourteen pending motions, awaiting initial review of Mr. McKinney's Fourth Amended Complaint.

### A.  Motion for Leave to Amend Complaint (ECF No. 55)

Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course no

later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive

pleading is required, 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). In Mr.

McKinney's most recent Motion for Leave to Amend Complaint, ECF No. 55, he moved to

amend his Complaint under Rule 15(a) of the Rules of Civil Procedure. *Id.* at 1. The original

Complaint was served on Defendants on July 2, 2024. ECF No. 32. Judge Meyer granted

Defendants an extension of time to file a responsive pleading, *see* ECF No. 46, but Defendants

have yet to do so. Thus, the "earlier" of the conditions described in Rule 15(a)(1) is twenty-one

days after service of the Complaint. Mr. McKinney's motion for leave to file amended

complaint, filed on January 23, 2025, ECF No. 55, is beyond the time limit for amending his

Complaint "as a matter of course" under Rule 15(a)(1).

　　　　If a party may not amend a pleading as a matter of course under Rule 15(a)(1), that "party

may amend its pleading only with the opposing party's written consent or the court's leave"

under Rule 15(a)(2). Mr. McKinney did not state in his motion that Defendants consented to him

amending his Complaint. *See* ECF No. 55. But he has sought leave of court to do so, and "[t]he

court should freely give leave when justice so requires" under Rule 15(a)(2).

　　　　The Court may deny leave to amend, however, for "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of the amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.

2008) (quoting *Foman v. Davis*, 371 U.S. 178, 192 (1962) (internal quotation marks omitted)).

But the non-moving party bears the burden of showing prejudice, bad faith, or futility of the

amendment. *See Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 380 (S.D.N.Y. 2022) (citation omitted). Because the non-moving party has not resisted Mr. McKinney's Motion for Leave to File Amended Complaint on any of these grounds, the Court concludes that justice requires granting leave to amend.

Accordingly, Mr. McKinney's Motion for Leave to File Amended Complaint, ECF No. 55, will be granted, his motion for leave to amend Complaint, ECF No. 50, will be denied as moot, and the Fourth Amended Complaint will be the operative pleading. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (noting that "an amended complaint ordinarily supersedes the original and renders it of no legal effect").

### B.  The Initial Review of Fourth Amendment Complaint

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

Because the purpose of an amended complaint is "to clarify or amplify the original cause of action, not add new causes of action," *Castellano v. Trump*, No. 3:17-CV-381 (MPS), 2017

WL 4401451, at *1 (D. Conn. Sept. 29, 2017), the Court's review of Plaintiff's Fourth Amended Complaint is limited to whether Plaintiff has pled additional facts therein that would support previously dismissed claims. *See Jordan v. Quiros*, No. 3:23-CV-254 (VAB), 2024 WL 3219130, at *4 (D. Conn. June 28, 2024) (refusing to consider plaintiff's "new theories of liability or new claims" in second amended complaint because it would defy purpose of amended complaint).

Thus, the Court's initial review here is limited to whether Mr. McKinney has alleged new facts in his Fourth Amended Complaint sufficient to overcome dismissal of his First Amendment retaliation claim. *See* ECF No. 13 at 7 (dismissing this claim but permitting Mr. McKinney to file an amended complaint "if he has good faith grounds to allege additional facts that overcome the grounds stated in this ruling for dismissing his claim[ ].").

"The Second Circuit has long held that an amended complaint completely replaces the original complaint," *Jordan v. Chiaroo*, No. 3:24-CV-204, 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024), so the Court will not consider allegations from Plaintiff's first three amended complaints in considering the factual basis for his claims. *See Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint."). And while the Court has considered all Mr. McKinney's allegations in his Fourth Amended Complaint, the Court recites here only those facts necessary to provide context for its initial review.

Mr. McKinney allegedly was transferred to Corrigan on April 25, 2024. ECF No. 58 ¶ 1. Mr. McKinney, a minimum-security inmate who had been housed in a single cell for the last

seven years because of mental health issues, allegedly encountered black mold in the shower. *Id.*
¶¶ 2–5. Mr. McKinney allegedly notified Warden Dougherty and N.K. O'Brasky of Legal
Affairs of the mold in the showers. *Id.* ¶¶ 6–7. While Warden Dougherty was later touring Mr.
McKinney's cell pod, Mr. McKinney allegedly asked the warden why Mr. McKinney was
housed in a "Supermax/Gang Jail" with "mostly lifers and gang members." *Id.* ¶¶ 8–10. Warden
Dougherty allegedly responded, "you['re] the guy [who] wrote up the inmate workers for not
cleaning the shower properly." *Id.* ¶¶ 13–14.

The inmate workers allegedly heard this and started calling Mr. McKinney a "snitch." *Id.*
¶ 16. The inmates allegedly began investigating McKinney and learned that he had testified in
two murder trials against members of the "[G]rape [S]treet [C]rips" gang. *Id.* ¶19. Inmates
allegedly told Mr. McKinney there was a "green light on [him] by the Crips and Bloods." *Id.* ¶
21.

In late May of 2024, Mr. McKinney allegedly sent text messages to his sister telling her
that he was in danger and to notify the State's Attorney. *Id.* ¶ 24–25. Lieutenant Peau and other
corrections officers allegedly later entered Mr. McKinney's cell because he sent these text
messages. *See id.* ¶¶ 22–24. Lieutenant Peau allegedly "yelled out loud that [Mr. McKinney] sent
text messages implying [he] informed on the Pod and the Crips that were going to stab[ ] [him]."
*Id.* ¶¶ 27–28. Lieutenant Peau allegedly then instructed Correctional Officer McGregor to have
Mr. McKinney spread his buttocks for a strip search. *Id.* ¶ 30–31. Correctional Officers allegedly
placed Mr. McKinney in "seg" after giving him a contraband ticket for possessing an altered nail
clipper. *Id.* ¶ 32. Seg allegedly was "full of [C]rips" who knew Mr. McKinney "told on them."
*Id.* ¶ 35. The Crips allegedly made death threats against Mr. McKinney and his family. *Id.* ¶ 36.

The Crips also allegedly discovered that Mr. McKinney's cousin works at Cheshire Correctional Institution ("Cheshire"), which placed Mr. McKinney at further risk of being harmed because his family member was a prison employee. *Id.* ¶¶ 38–39.

In early June of 2024, Mr. McKinney allegedly handed Correctional Officer Duquette a request to be placed in protective custody. *Id.* ¶¶ 40–41. Officer Duquette allegedly gave the request to Lieutenant Pearson. *Id.* ¶¶42–43. Lieutenant Pearson allegedly came to Mr. McKinney's cell, kicked the door, and allegedly told Mr. McKinney in front of the whole unit that his "P.C. [p]ackage [was] denied." *Id.* ¶¶ 44–45.

The inmates allegedly heard this and immediately began threating Mr. McKinney and yelling to each other through the cell vents that Mr. McKinney "told." *Id.* ¶¶ 46–47. A few hours later, Officer Duquette allegedly told Mr. McKinney that he was going to be placed in another cell pod with a cellmate despite Lieutenant Pearson and Warden Dougherty knowing that sharing cell "exacerbate[d]" Mr. McKinney's mental health issues. *Id.* ¶¶ 49–52. Lieutenant Pearson allegedly refused to review Mr. McKinney for placement in protective custody. *Id.* ¶ 55. Officer Duquette allegedly issued Mr. McKinney a ticket for refusing housing when Mr. McKinney requested protective custody. *Id.* ¶¶ 55–56. Correctional officers allegedly thereafter placed Mr. McKinney in seg for five days until Lieutenant Pearson dismissed the ticket. *Id.* ¶ 57.

One week later, corrections staff allegedly told Mr. McKinney he was being transferred to another prison. *Id.* ¶ 62. Mr. McKinney allegedly learned that his property was "already on the van." *Id.* ¶¶ 62–63. When Mr. McKinney allegedly arrived at another prison—Carl Robinson Correctional Institution ("Robinson")—he allegedly discovered that he was missing personal property. *Id.* ¶¶ 64–66. Lieutenant Ouellette allegedly told Mr. McKinney that he would look

into the missing property. *Id.* ¶¶ 68–69. Mr. McKinney allegedly told Lieutenant Ouellette that

he wanted to be placed in protective custody. *Id.* ¶¶ 69–70. Lieutenant Ouellette allegedly placed

Mr. McKinney in seg pending investigation. *Id.* ¶ 70. Lieutenant Ouellette allegedly later

summoned Mr. McKinney to the "intelligence office" and told him that he was "pending P.C."

*Id.* Other inmates allegedly witnessed Lieutenant Ouellette—an intelligence officer—escort Mr.

McKinney from the intelligence office back to seg. *See id.*

Lieutenant Ouellette allegedly later summoned Mr. McKinney to the intelligence office

without ensuring his privacy. *Id.* ¶¶ 71–72. An inmate allegedly sweeping the floor saw Mr.

McKinney enter the office and registered a look of shock. *Id.* ¶ 73. Lieutenant Ouellette allegedly

subsequently went to Mr. McKinney's cell door and told Mr. McKinney in front of other inmates

that Director Snyder had denied his "P.C. package." *Id.* ¶¶ 75–76. After Mr. McKinney allegedly

entered the general population an hour later, all inmates in the unit allegedly were calling Mr.

McKinney a "snitch." *Id.* ¶¶ 77–78. Mr. McKinney allegedly again requested to be placed in

protective custody. *Id.* ¶ 80. Lieutenant Ouellette allegedly denied Mr. McKinney's request and

placed him in seg, where Mr. McKinney stayed until he was transferred to Cheshire. *Id.* ¶¶ 81–

82.

In late June of 2024, Mr. McKinney allegedly was transferred to Cheshire. *Id.* ¶ 84.

Correctional Officer Rivera allegedly told Mr. McKinney that he would be placed in a cell with a

cellmate. *Id.* ¶¶ 84–85. Mr. McKinney allegedly requested to be placed in protective custody. *Id.*

¶¶ 86–87. Officer Rivera allegedly issued Mr. McKinney a ticket for refusing housing and placed

Mr. McKinney in seg for 28 days. *Id.* ¶¶ 87–91. In July of 2024, Mr. McKinney allegedly asked

Deputy Warden Nunez about Mr. McKinney's missing property. *Id.* ¶¶ 98–99. Deputy Warden

Nunez allegedly began "yelling loud[ly]" about Mr. McKinney's "P.C. package." *Id.* ¶ 100. Other inmates allegedly heard this and started calling Mr. McKinney a "P.C. snitch." *Id.* ¶ 101. Mr. McKinney allegedly is now in constant fear of his safety. *See id.* ¶¶ 104–107.

Judge Meyer permitted Mr. McKinney's Eighth Amendment deliberate indifference claim to proceed against Warden Dougherty because the warden allegedly identified Mr. McKinney as the inmate who filed a complaint against the prisoner workers in the presence of those workers, subjecting Mr. McKinney to threats. *See* ECF No. 13 at 5. Judge Meyer permitted the same claim to proceed against Lieutenant Pearson because Lieutenant Pearson allegedly summarily denied Mr. McKinney's request to be placed in protective custody after Mr. McKinney told him that he feared for his life. *See id.*

Because Mr. McKinney realleges these allegations in his Fourth Amended Complaint, *see* ECF No. 58 ¶¶ 13–14 (allegations against Warden Dougherty); *id.* ¶¶ 44–45, 55 (allegations against Lieutenant Pearson), the Court will permit Mr. McKinney's Eighth Amendment deliberate indifference claim to proceed against Warden Dougherty and Lieutenant Pearson for the reasons identified by Judge Meyer. *See* ECF No. 13 at 5.

Mr. McKinney asserts similar allegations against Lieutenant Peau (employed by Corrigan), Lieutenant Ouellette (employed by Robinson), and Deputy Warden Nunez (employed by Cheshire). Mr. McKinney claims that Lieutenant Peau "yelled out loud that [Mr. McKinney] sent text messages implying [he] informed on the Pod and the Crips that were going to stab[ ] [him]," ECF No. 58 ¶ 27–28, which was followed by death threats against Mr. McKinney and his family. *Id.* ¶ 36.

Similarly, Mr. McKinney claims that Lieutenant Ouellette told Mr. McKinney in front of

other inmates at Robinson that Director Snyder had denied his "P.C. package" and later denied

his request to be placed in protective custody. *See* ECF No. 58 ¶¶ 75–76, 80. Mr. McKinney also

claims that Deputy Warden Nunez "yell[ed] loud[ly]" about Mr. McKinney's "P.C. package" in

the presence of other inmates at Cheshire. *See id.* ¶¶ 98–100.

These actions are similar in kind to those of Warden Dougherty and Lieutenant Pearson.

Thus, the claim against Lieutenant Peau may proceed for the reasons identified by Judge Meyer.

*See* ECF No. 13 at 5. But the claims against Lieutenant Ouellette and Deputy Warden Nunez

must be severed and dismissed because they are improperly joined.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action

only if "any right to relief is asserted against them jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences, and any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first

prong of Rule 20(a) is approached on a case by case basis." *Dixon v. Scott Fetzer Co.*, 317

F.R.D. 329, 331 (D. Conn. 2016) (citation and quotation marks omitted). The "same transaction"

requirement means that there must be some allegation that the joined defendants "conspired or

acted jointly." *Arista Records LLC v. Does 1–4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008)

(citation and quotation marks omitted). As the Second Circuit has observed in the Rule 13

context, whether a counterclaim arises out of the same transaction as the original claim depends

on the logical relationship between the claim and whether the "essential facts of the various

claims are so logically connected that considerations of judicial economy and fairness dictate

that all the issues be resolved on one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir.

1978).

Here, the Court may infer that Lieutenant Peau's actions were part of a "series of transactions or occurrences" at Corrigan and that "question[s] of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2), because the allegations against Warden Dougherty, Lieutenant Pearson, and Lieutenant Peau, all involve identifying Mr. McKinney as a "snitch" to other inmates at Corrigan and then failing to protect him after doing so.

Mr. McKinney alleges similar allegations against Lieutenant Ouellette and Deputy Warden Nunez, but, importantly, these allegations relate to actions taken at different prisons with different prisoners at different times. Thus, the actions of Lieutenant Ouellette and Deputy Warden Nunez cannot be said to be part of the same "series of transactions or occurrences" at Corrigan and involve "question[s] of law or fact common to all defendants . . . in the action" under Rule 20(a)(2). *See*, *e.g.*, *Salaman v. Semple*, No. 3:20CV32 (MPS), 2020 WL 6729417, at *18 (D. Conn. Nov. 16, 2020) (plaintiff's allegations pertaining to imprisonment at MacDougall-Walker Correctional Institution ("MacDougall"), Corrigan, and Robinson prisons did not "all arise out of the same transaction or occurrence" as the allegations pertaining to plaintiff's imprisonment at Garner Correctional Institution).

Accordingly, claims against Lieutenant Ouellette and Deputy Warden Nunez must be severed and dismissed without prejudice under Rules 20 and 21 of the Federal Rules of Civil procedure. *See id.*

Judge Meyer also concluded that Mr. McKinney had not alleged any facts in his Complaint supporting a First Amendment retaliation claim against Warden Dougherty and

Lieutenant Pearson because Mr. McKinney failed to "allege sufficient facts to show that Dougherty . . . engaged in any intentional retaliation" or that "Dougherty took adverse action against McKinney because of McKinney's complaint to him that he should not be at Corrigan." ECF No. 13 at 6–7. Mr. McKinney has alleged no facts in his Fourth Amended Complaint that would overcome Judge Meyer's reasons for dismissal. Even if prison officials took actions that were "adverse" to Mr. McKinney, he has failed to establish any "causal connection between [his] protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020).

Accordingly, Mr. McKinney's First Amendment claim remains dismissed.

McKinney seeks damages, injunctive, and declaratory relief. ECF No. 58 at 15. To the extent that Mr. McKinney asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Moreover, "[a] plaintiff may not obtain injunctive relief against a state official in [his] individual capacity." *Taylor v. Dorantes*, No. 3:19CV01350(JCH), 2019 WL 13293562, at *4 (D. Conn. Oct. 16, 2019). And "[a] plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation." *Bey v. Megget*, No. 3:24-CV-1258 (SVN), 2025 WL 27463, at *6 (D. Conn. Jan. 3, 2025). Because Mr. McKinney alleges no facts suggesting an ongoing constitutional violation, he may not pursue injunctive or declaratory relief against the Defendants.

Mr. McKinney may, however, pursue his Eighth Amendment deliberate indifference claim for damages against Warden Dougherty, Lieutenant Pearson, and Lieutenant Peau in their individual capacities. But all other claims and all other Defendants are dismissed from this case.

**C. The Motion for A Temporary Restraining Order (ECF No. 9)**

Mr. McKinney filed a motion seeking a "Temporary Restraining Order against Lt. Pearson." ECF No. 9 at 1. Mr. McKinney claims that Lieutenant Pearson denied Mr. McKinney's request for protective custody the day after he filed this lawsuit. *Id.* Mr. McKinney alleges that Lieutenant Pearson called Mr. McKinney a liar and refused to take his protective custody review seriously. *Id.* Mr. McKinney and Lieutenant Pearson allegedly engaged in a shouting match, and Lieutenant Pearson put his hands on Mr. McKinney to provoke him. *Id.* McKinney asks the Court to order another supervisor—specifically, Lieutenant Bowers—to conduct the protective custody interview in a confidential setting. *Id.*

In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction. *Fairfield Cnty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013) ("In the Second Circuit, the standard for issuance of a temporary restraining order ('TRO') is the same as the standard for a preliminary injunction." (citations omitted)). Even if Mr. McKinney met this standard, *see Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (reciting standard), the Court would deny the motion as moot. Typically, an inmate's claims for injunctive relief against correctional staff at a particular facility become moot when the inmate is transferred to a different facility. *Reese v. Lightner*, No. 3:18CV1922(KAD), 2020 WL 1043794, at *2 (D. Conn. Mar. 4, 2020) ("Typically, an inmate's claims for injunctive and declaratory relief against correctional staff regarding conditions of confinement at a particular facility become moot when the inmate is transferred to a different facility or released from custody because those forms of relief become unnecessary and can no longer be awarded." (citations omitted)) (collecting cases).

14

Mr. McKinney is currently located at MacDougall-Walker.[1] Thus, Mr. McKinney's claim for injunctive relief against Corrigan officials became moot when he transferred. *See id.*

Accordingly, McKinney's Motion for Temporary Restraining Order, ECF No. 9, will be denied as moot.[2]

### D. The Motions to Appoint Counsel (ECF Nos. 10, 52)

In general, a plaintiff has no entitlement to court-appointed counsel in civil proceedings; and the Second Circuit has repeatedly cautioned against the routine appointment of counsel. *See, e.g., Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir. 1989). *See also* D. Conn. L. Civ. R. 83.10(c)1. ("Pro bono counsel may be appointed *at the discretion of the presiding judge* upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice *based upon factors* such as (a) a party's apparent ability or inability to afford legal counsel, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses." (emphasis added)).

The Second Circuit has held that, insofar as volunteer lawyer time is not always readily available, a plaintiff seeking appointment of counsel must make a threshold showing that he "sought counsel and has been unable to obtain it." *McDonald v. Head Crim. Ct. Supervisor*

---

[1] *See* Connecticut State Department of Correction, *CT Inmate Info* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=231828 (last visited February 28, 2025). The Court may take judicial notice of this website. *See, e.g.,* *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera,* 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty,* 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

[2] In addition to arguing that Mr. McKinney's motion is moot, ECF No. 20-1 at 18–21, Defendants also argue that Mr. McKinney's motion fails on the merits. *See id.* at 7–18. Because Mr. McKinney's motion is moot, the Court need not engage the merits. *See Charter Pracs., Int'l, LLC v. Robb,* No. 3:12CV1768 (RBC), 2013 WL 12623428, at *2 (D. Conn. Feb. 6, 2013), report and recommendation adopted (Mar. 5, 2013) (declining to reach the merits of plaintiff's motion for preliminary injunction after determining that it was moot).

*Officer,* 850 F.2d 121, 123 (2d Cir. 1988). If successful in proving his inability to secure counsel,

a plaintiff must then demonstrate that his complaint "pass[es] the test of likely merit." *Cooper,*

877 F.2d at 173. Specifically, he must establish that the claims in the complaint have a sufficient

basis to justify appointing *pro bono* counsel to pursue them. Notably, "[e]ven where a claim is

not frivolous, counsel is often unwarranted where the [plaintiff's] chances of success are

extremely slim." *Id.* at 171.

McKinney has filed two motions to appoint counsel. ECF Nos. 10, 52. He maintains that

he has contacted six attorneys without success. *See* ECF No. 10 at 4–5; ECF No. 52 at 4–5. But

he fails to state whether he has also contacted the Inmates' Legal Aid Program ("ILAP"), the

organization under contract with the Department of Correction ("DOC") to provide legal

assistance to inmates. Courts in this District have repeatedly held that "[a]bsent a denial of

assistance by Inmates' Legal Aid Program or a showing that the assistance available is

insufficient at this stage of litigation, the plaintiff cannot demonstrate that he is unable to obtain

legal assistance on his own." *Swinton v. Wright,* No. 3:16-cv-659 (SRU), 2016 WL 3579075, at

\*2 (D. Conn. June 28, 2016) (finding that the plaintiff, who was declined representation by two

law firms, failed to establish that he was unable to secure legal assistance because he did not

make an attempt to contact ILAP).

Further, at this early stage of the proceedings, the record is not sufficiently developed for

the Court to assess the "likely merit" of Mr. McKinney's claims. Although the Court has

permitted Mr. McKinney's Eighth Amendment claim to proceed to service against three

defendants, that permission shows only that the allegations with respect to this claim are

adequate to withstand dismissal for purposes of initial screening under 28 U.S.C. § 1915A.

*Jusino v. Wolf-Craig*, No. 3:23-CV-1014 (SRU), 2024 WL 3400528, at *1 (D. Conn. July 12, 2024). At this point, it remains unclear whether the claim has sufficient merit to warrant appointment of counsel. The Court is mindful of the difficulties faced by incarcerated persons who are litigating an action without counsel.

Accordingly, given the circumstances of this case and the standards and criteria articulated by the Second Circuit, the Court will deny Mr. McKinney's motions to appoint counsel at this time.

### E. The Emergency Motion for Preliminary Injunction and Supplement (ECF Nos. 15, 16).

Mr. McKinney also filed an emergency motion for preliminary injunction, ECF No. 15, and a supplement to that motion. ECF No. 16. McKinney claims some of his property was not transferred with him from Corrigan to Robinson. ECF No. 15 at 1–2. McKinney seeks an order requiring DOC to replace the property lost in transit. *Id.* at 2. He also requests that he be placed in protective custody or a single cell and that DOC remove a "profile" between him and another inmate. *Id.*; ECF No. 16 at 4.

Many courts in this Circuit have denied motions for injunctive relief where the plaintiff sought to enjoin conduct that was not related to the relief sought or the conduct alleged in the underlying complaint. *Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360 (KAD), 2021 WL 268884, at *2 (D. Conn. Jan. 27, 2021) ("Indeed, many courts in this Circuit have likewise denied motions for injunctive relief where the plaintiff sought to enjoin conduct that was not related to the relief sought or the conduct alleged in the underlying complaint." (citations omitted)) (collecting cases). McKinney's operative complaint concerns deliberate indifference claims against three officials at Corrigan, as discussed above. Allegations against officials at

Robinson are unrelated to those claims. Moreover, this request is moot in light of Mr. McKinney's transfer to MacDougall. *See supra* note 1; *Reese*, *supra*, at *2.

Accordingly, because McKinney seeks injunctive relief unrelated to the relief sought or the conduct alleged in the underlying operative complaint and his request is moot, his emergency motion for preliminary injunction, ECF Nos. 15–16, will be denied.

**F. The Second Motion for Temporary Restraining Order (ECF No. 27)**

Mr. McKinney also filed a second motion for temporary restraining order. ECF No. 27. There, Mr. McKinney maintains that he is "sitting in seg on no status." *Id.* at 2. McKinney requested protective custody from Captain Saas, but Captain Saas refused to place him in protective custody. *Id.* Mr. McKinney maintains that "Cheshire wants Corrigan to do it. And Corrigan wants Cheshire to do it." *Id.* Mr. McKinney claims "[t]he defendants are failing to protect [him]. They are being deliberately indifferent towards [his] health and safety." *Id.* at 3. Mr. McKinney requests the Court to "order the defendants to do a proper protective custody package per the 9.9 directive." *Id.*

Mr. McKinney seeks injunctive relief against "[t]he defendants," *id.*, who are all employed at Corrigan. As stated above, an inmate's claims for injunctive relief against correctional staff at a particular facility typically become moot when the inmate is transferred to a different facility. *Reese*, *supra*, at *2 ("Typically, an inmate's claims for injunctive and declaratory relief against correctional staff regarding conditions of confinement at a particular facility become moot when the inmate is transferred to a different facility or released from custody because those forms of relief become unnecessary and can no longer be awarded."). Mr.

McKinney was transferred to MacDougall, *see supra* note 1, so he is no longer in the custody of Defendants' prison.

Accordingly, to the extent Mr. McKinney requests the Court to order Corrigan officials to screen him for protective custody, his second motion for temporary restraining order, ECF No. 27, will be denied as moot in light of his transfer to MacDougall.

**G. The Motion for Order (ECF No. 33)**

Mr. McKinney also filed a motion requesting the Court to order "Defendants/Cheshire staff unit manager Saas to give [Mr. McKinney] a proper pen" and "some writing paper." ECF No. 33 at 1. Mr. McKinney would also "like to be moved to the low side away from the people who have a hit out on [him]." *Id.* McKinney would further like his property back and to be given access to a notary. *Id.* McKinney additionally requests to be interviewed for protective custody. *Id.* at 2. McKinney would also like to receive his regular and legal mail. *Id.*

Mr. McKinney's claims for injunctive relief against Cheshire officials are moot because he is now at MacDougall. *See Reese*, *supra*, at *2. Moreover, requests for a proper pen, writing paper, access to a notary, and mail are not related to the relief sought or the conduct alleged in the underlying operative complaint. *See Purugganan*, *supra*, at *2.

Accordingly, because Mr. McKinney's requests for injunctive relief are unrelated to the allegations in the underlying operative complaint and are moot, this motion, ECF No. 33, will be denied.

**H. The Motion for Order to Compel Discovery, TRO, Injunction (ECF No. 49)**

This motion details several hardships Mr. McKinney has faced while incarcerated at MacDougall. *See generally* ECF No. 49. He makes the following requests of the Court: (1) that

"he be allowed to watch and take notes on all videos he preserved" at previous places of imprisonment; (2) that prison medical officials treat a concussion he sustained after being assaulted in the shower and "slice marks" he sustained from shackles; (3) that he be permitted to view video of his placement in seg at Corrigan; (4) that the Court order Defendants to produce the protective custody package he filed at Cheshire and Corrigan; (5) that Defendants produce videos from Robinson and Cheshire; (6) that he receive an update on his case; (7) that the Court issue rulings on his pending motions; and (8) that the Court sanction Defendants for failure to comply. Taking these issues in reverse order, the Court will not sanction Defendants for failure to comply with their discovery obligations because Plaintiff has failed to show that Defendants have withheld any discovery they are obligated to provide. This order serves as a ruling on all pending motions. It also serves to update Mr. McKinney on the status of his case. Defendants need not produce video from Robinson and Cheshire because the Court has severed and dismissed any claims arising from those prisons. Defendants need not produce the protective custody package Mr. McKinney filed at Cheshire for the same reason. As to Mr. McKinney's requests that the Court order Defendants to produce his protective custody package from Corrigan, Mr. McKinney has failed to explain how this is relevant to his claim or would otherwise assist him in prosecuting his case.

Mr. McKinney's request to view video of his placement in seg at Corrigan and to take notes on videos must be addressed with prison officials at MacDougall. Defendants have indicated that Mr. McKinney was able to view such videos at Cheshire until he was transferred. ECF No. 53 at 1. But Mr. McKinney has not alleged in his motion that MacDougall officials have denied him access to videos. Mr. McKinney states that a MacDougall official has denied

access to Mr. McKinney's "legal work," ECF No. 49 at 1, but the Court will not speculate that Mr. McKinney's "legal work" includes videos that may not be located at the prison. Lastly, the Court cannot order injunctive relief against medical staff that is unrelated to the claims in the Fourth Amended Complaint. *See Purugganan*, *supra*, at *2 ("Indeed, many courts in this Circuit have likewise denied motions for injunctive relief where the plaintiff sought to enjoin conduct that was not related to the relief sought or the conduct alleged in the underlying complaint."). Accordingly, this motion, ECF No. 49, will be denied without prejudice.

Defendants are encouraged to ensure that all relevant discovery is available for Mr. McKinney to review at MacDougall. Once done, Mr. McKinney is encouraged to follow the prison's procedures for reviewing this material. If MacDougall prison officials are not cooperative in permitting Mr. McKinney to review relevant discovery materials in their possession, Mr. McKinney may renew his motion and describe with specificity the actions MacDougall prison officials have taken to prevent him from reviewing discovery.

**I. The Motion to Compel Discovery (ECF No. 56)**

Mr. McKinney has filed a motion seeking discovery, most of which is irrelevant to his claim. *See* ECF No. 56 at 1. To the extent any of this discovery is relevant to his claim, Mr. McKinney must direct his request to Defendants, not the Court. *See* D. Conn. L. Civ. R. 5(f)1 ("Pursuant to Fed. R. Civ. P. 5(d), expert witness reports, computations of damages, depositions, notices of deposition, interrogatories, requests for documents, requests for admissions, and answers and responses shall not be filed with the Clerk's Office except by order of the Court."). The Court is not in possession of any discovery requested in Mr. McKinney's motion.

Accordingly, this motion will be denied.

21

**J.  The Motion for Default Entry (ECF No. 57)**

Mr. McKinney seeks default against Defendants under Rule 55 of the Federal Rules of Civil Procedure because Defendants have not filed an answer. *See* ECF No. 58. That Defendants have not filed an Answer is entirely attributable to Mr. McKinney's repeated filing of amended complaints. Mr. McKinney has filed no fewer than four amended complaints.

The Court is required to review amended complaints under 28 U.S.C. § 1915A(a). If, as here, a plaintiff continues to file amended complaints, the Court must continue to review them and the Defendants (existing or added) must continue to answer them. Because Mr. McKinney's Fourth Amended Complaint must be served on an additional Defendant, this will continue to delay the time for Defendants to answer the Complaint.

Accordingly, as any delay in answering Mr. McKinney's series of amended pleadings is due to Mr. McKinney's repeated filing of amended complaints, this motion, ECF No. 57, will be denied.

**K.  The Emergency Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 61)**

Mr. McKinney claims in this motion that prison officials plan to transfer him from MacDougal to Corrigan. ECF No. 61 at 1. Mr. McKinney seeks an order enjoining prison officials from transferring him. *Id.* at 2. Mr. McKinney "has no inherent right to remain in any particular correctional facility." *Day v. Lantz*, No. 3:05CV1347 (AHN), 2005 WL 8159872, at *5 (D. Conn. Oct. 24, 2005) (citing *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more

disagreeable" or the prison has "more severe rules"); *Asquith v. Department of Corrections*, 186 F.3d 407, 410, 411 (3d Cir. 1999) (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility); *Russell v. Scully*, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison). *See also Osuch v. Gregory*, 303 F. Supp. 2d 189, 194 (D. Conn. 2004) (citing *Olim* and *Meachum*) (denying plaintiff's request to "order the defendants not to exert any influence over correctional staff to have him transferred to any other correctional facility").

Even if Mr. McKinney retained a right to avoid transfer to Corrigan, he "cannot obtain preliminary injunctive relief from persons who are not named as defendants." *Rashid v. Kurtulus*, No. 3:23-CV-722 (VAB), 2023 WL 5672589, at *10 (D. Conn. Sept. 1, 2023). Under Connecticut state law, discretion to transfer an inmate rests with the Commissioner of Correction, *see* Conn. Gen. Stat. Ann. § 18-87 ("The Commissioner of Correction may transfer any inmate of any of the institutions of the Department of Correction to any other appropriate state institution with the concurrence of the superintendent of such institution . . . when the Commissioner of Correction finds that the welfare or health of the inmate requires it."), who is not named as a defendant in this suit. Because the Commissioner of Correction is not a party to this suit, Mr. McKinney cannot seek injunctive relief from the Commissioner.

Accordingly, this motion, ECF No. 61, will be denied.

### L.  The Motion for Discovery Conference (ECF No. 62)

Mr. McKinney last moves the Court to schedule a discovery conference because Defendants have only provided discovery relating to existing defendants, not defendants named in subsequent amended complaints. *See* ECF No. 62 at 1–2. But, until now, the Court had not

conducted its initial review of Mr. McKinney's several amended complaints. And after the Court conducted initial review of Mr. McKinney's Fourth Amended Complaint, it determined that any claims arising from events outside of Corrigan would be severed and dismissed.

Accordingly, Mr. McKinney's concerns that Defendants have not provided discovery related to dismissed claims are now moot, and this motion, ECF No. 62, will be denied.

**III. ORDERS**

Mr. McKinney's Motion for Leave to File Amended Complaint, ECF No. 55, is **GRANTED**.

All other pending motions, ECF Nos. 9, 10, 15, 16, 27, 33, 49, 50, 52, 56, 57, 61, 62 are **DENIED**.

Mr. McKinney may pursue his Eighth Amendment deliberate indifference claim for damages against Warden Dougherty, Lieutenant Pearson, and Lieutenant Peau in their individual capacities.

All other claims and all other Defendants are dismissed from this case.

The Clerk of Court is respectfully directed to remove from the caption the following individuals: C.O. Duquette, John Doe, Lt. Ouellette, C.O. McCall, Deputy Warden Nunez, C.O. Rivera, C.O. Getchel, and Lt. McGregor.

The Court enters the following additional orders:

**(1)** The Clerk of Court shall verify the current work address of Lieutenant Peau with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Fourth Amended Complaint, this order, and a waiver of service of process request packet to this defendant at his or her confirmed address by **March 21, 2025**. On the thirty-fifth (35th) day after

24

mailing, but no later than **April 4, 2025**, the Clerk of Court shall report to the Court on the status of the request. If Lieutenant Peau fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and Lieutenant Peau shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** Defendants shall file their response to the Fourth Amended Complaint, either an Answer or motion to dismiss, by **May 23, 2025**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

**(3)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 31, 2025.** Discovery requests need not be filed with the Court.

**(4)** All motions for summary judgment shall be filed by **December 5, 2025**.

**(5)** If Mr. McKinney changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so may result in the dismissal of the case. Mr. McKinney should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. McKinney has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. McKinney should also notify the attorney for Defendants of his new address.

**(6)** Mr. McKinney shall utilize the Prisoner E-filing Program when filing documents with the Court. Mr. McKinney is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**(7)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(8)** The Clerk of Court shall send a courtesy copy of the Fourth Amended Complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED.

Dated this 28th day of February, 2025 at New Haven, Connecticut.

/s/ Victor A. Bolden
_____

Victor A. Bolden
United States District Judge